IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

**Roanoke Division**

ERIC DEPAOLA,

    Plaintiff,

v.                               CIVIL ACTION NO. 7:16-cv-00485

H. CLARKE, et al.,

    Defendants.

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW the Defendants H. Clarke, A.D. Robinson, E.R. Barksdale, A. Gallihar; W. Swiney, D. Still, A. Duncan, J.G. Lyall and R. Stanley ("Defendants"), by counsel, and in support of their motion for summary judgment, submit the following"

Plaintiff Eric DePaola, #1145137 ("DePaola"), an inmate with the Virginia Department of Corrections ("VDOC"), has filed this action pursuant to 42 U.S.C. § 1983 alleging violation of his rights under the First Amendment, Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Specifically, DePaola complains about the VDOC grooming policy regarding beard length, the barber services at Red Onion State Prison ("ROSP,") his assignment within the Step Down Program, and television privileges. DePaola asks for declaratory relief, injunctive relief, and nominal damages in the amount of $2,000.00.

Defendants enclose and incorporate by reference the affidavit of Amee Duncan, Unit Manager of C-Unit at ROSP ("Duncan Aff."). Defendants respectfully request that this Court consider this exhibit as evidence in support of his motion.

# STATEMENT OF UNDISPUTED FACTS

1. Plaintiff is an inmate with the VDOC and was, for all pertinent times, housed at ROSP.

2. At all pertinent times herein, Defendants were employed by the VDOC.

**Step-Down**

3. DePaola is a Level "S" offender, which is a special purpose bed assignment used by ROSP for the protective care and custodial management of offenders. Duncan Aff. ¶ 4. He participates in the Step-Down Program at ROSP. *Id.*

4. Security Level "S" is comprised of three management pathways: (1) Intensive Management (IM) Security Level "S," (2) Special Management (SM) Security Level "S," or (3) the Re-entry Unit (offenders with 24 months or less remaining on their sentence). Duncan Aff. ¶ 5.

5. DePaola is assigned to the IM Security pathway. Duncan Aff. ¶ 6. Offenders are assigned to the IM pathway if they have the potential for extreme and/or deadly violence. *Id.* They are reviewed and assigned to escalating privilege levels, and the various assignments are as follows: IM-0, IM-1, IM-2, and IM-SL6. *Id.*

**Grooming**

6. VDOC Operating Procedure (OP) 864.1, Offender Grooming and Hygiene, establishes uniform personal grooming standards for offenders incarcerated in the VDOC to facilitate the identification of offenders and promote safety, security and sanitation. Duncan Aff. ¶ 7. All VDOC offenders are permitted to grow a beard that is ¼-inch maximum in length. *Id.* Offenders who violate this policy may be charged with Disciplinary Offense Code 133 (Refusal to Obey an Order), and placed in a segregation housing assignment. *Id.* at Enclosure A.

7.  Offenders in segregation are permitted to shower and shave not less than three times a week. Barber services are offered monthly. Duncan Aff. ¶ 8. DePaola has been in compliance with the VDOC grooming standards and most recently received barber services on March 7, 2017. *Id.*

**Religious Services while in Segregation**

8.  Offenders assigned to a segregated housing assignment are limited in their out-of-cell activities. Duncan Aff. ¶ 9. Although segregation offenders may not attend group religious services, they may practice their faith in their cells. *Id.* ROSP has a Chaplain on staff for all religious requests including religious materials and religious guidance. *Id.* Offenders assigned to a segregated housing assignment may request that the Chaplain visit their cell for private worship and counsel. *Id.* at Enclosure B.

**Television**

9.  There are no "communal" televisions in the housing pods of C-Unit. Duncan Aff. ¶ 10. There are incentives built into the Step-Down Program which we hope will motivate the offenders to participate and work toward long-term behavioral changes, new thought patterns and social skills. *Id.* Televisions are considered a privilege. *Id.* If an offender participates in the Challenge Series by working to reach established goals and remain infraction free, he may be considered for a pod job which would enable him to earn money for a personal television. *Id.*

10. According to Defendants' records, DePaola's television was confiscated in November 2015, when he was reduced to IM-0 status. Duncan Aff. ¶ 11. However, it was returned to him on April 29, 2016, after reaching IM-1 status on April 28, 2016. *Id.*

11. DePaola was most recently reviewed by the Institutional Classification Authority (ICA) on March 1, 2017. Duncan Aff. ¶ 12. It was noted that DePaola had completed the

Challenge Series and the ICA recommended his continued assignment to segregation, IM-2 housing status, pending review by the Dual Treatment Team. *Id.* at Enclosure C.

## ARGUMENT AND AUTHORITIES

### A. Legal Standard

A motion for summary judgment is appropriate where "materials in the record" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Yet, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988). The Court should view the evidence and reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. When, based on the evidence presented, a fair-minded jury could not reasonably find for the plaintiff, summary judgment is appropriate. *See id.* at 252.

### B. First Amendment and RLUIPA

DePaola alleges that the policies enacted by Defendants' are burdening his free exercise of his religious practices in violation of his rights under the First Amendment and RLUIPA rights. In particular, he claims that the exercise of his religion is burdened because: (1) VDOC policies and procedures do not allow him to grow his beard as his religion requires and affect the barber services received; and (2) that VDOC policies and procedures hinder his ability to attend

4

weekly Jum'ah service and his access to television. For the reasons explained in detail below, Defendants respectfully request that this Court grant summary judgment in their favor as to all of DePaola's First Amendment and RLUIPA claims.

The First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise thereof." U.S. Const. amend I.; *Cruz v. Beto*, 405 U.S. 319, 322 (1977). "To prove a violation of this right, an inmate must first state facts sufficient to show that (1) she holds a sincere belief that is religious in nature; (2) the prison regulation substantially burdens her right to free exercise of her religious beliefs; and (3) the regulation is not 'reasonably related to legitimate penological interests.'" *Rountree v. Clarke*, No. 7:11CV00572, 2015 U.S. Dist. LEXIS 28511, at *40-42 (W.D. Va. Mar. 9, 2015) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quotation and citation omitted). RLUIPA employs similar, albeit not identical standards. To succeed on a RLUIPA claim, the inmate bears the initial burden of establishing that the challenged policy substantially burdens his exercise of religion. *Couch v. Jabe*, 679 F.3d 197, 200 (4th Cir. 2012). If that burden is met, then the government must prove that the challenged policy is the "least restrictive means of furthering a compelling governmental interest." *Id.*; 42 U.S.C. § 2000cc-1(a).

Thus, to succeed on his claims under either the First Amendment or RLUIPA, DePaola must first show that the policy or procedure he complains of substantially burdens his religious practice. *See O'Lone*, 482 U.S. at 349; *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). A regulation imposes a "substantial burden" if it "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace*, 472 F.3d at 187 (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981). However, "[n]o substantial burden occurs if the government action merely makes the religious exercise more expensive or

5

difficult or inconvenient, but does not pressure the adherent to violate [his] religious beliefs or abandon one of the precepts of [his] religion." *Rountree v. Clarke*, No. 7:11CV00572, 2015 U.S. Dist. LEXIS 28511, at *21 (citing *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007); *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007)); *accord Wilson v. McPeak*, No. 7:15cv00175, 2016 U.S. Dist. LEXIS 19443, at *12-13 (W.D. Va. Feb. 18, 2016). "'[A]t a minimum the substantial burden test requires that a . . . plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice.'" *Dellinger v. Clarke*, No. 7:15cv00233, 2016 U.S. Dist. LEXIS 36824, at *8-9 (W.D. Va. Mar. 22, 2016) (quoting *Smith v. Allen*, 502 F.3d at 1278) (alternation in original).

Under a RLUIPA analysis, if DePaola establishes that he holds a sincere religious belief, and that is ability to exercise his religion has been substantially burdened by the challenged policies, the next inquiry is whether the applicable policies are in furtherance of a compelling governmental interest, and are the least restrictive means of furthering that interest. *See* 42 U.S.C. § 2000cc-1(a). When determining whether a compelling governmental interest exists, courts should give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005). This is because RLUIPA was not intended to "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Id.* "'The least-restrictive-means standard . . . requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of

6

religion by the objecting party.'" *Jehovah v. Clarke*, 798 F.3d 169, 177 (4th Cir. 2015) (quoting *Holt v. Hobbs*, 135 S. Ct. 853, 864 (2015)).

Under a First Amendment analysis, if DePaola establishes that he holds a sincere religious belief, and that is ability to exercise his religion has been substantially burdened by the challenges policies, the next inquiry is whether the prison regulation is reasonably related to penological interests. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997). Factors relevant in determining the reasonableness of a regulation include: (1) the connection between the regulation and a legitimate, neutral government purpose, (2) the existence of alternative means of exercising the right, (3) the impact accommodation of the right would have on guards, other inmates, and prison resources, and (4) the absence of "obvious, easy alternatives" to the regulation. *Turner*, 482 U.S. at 89-91. When applying these factors, the court must "respect the determinations of prison officials," *United States v. Stotts*, 925 F. 2d 83, 86 (4th Cir. 1991), and the prisoner carries the burden of proof under the *Turner* rational basis analysis to disprove the validity of the prison regulation at issue. *Overton v. Bazzetta*, 539 U.S. 126 (2003).

   *1. Beard Length*

DePaola's first claim alleges that his constitutional rights under the First Amendment and RLUIPA are being violated because VDOC's policies and procedures do not allow him to grow his beard as his religion requires. As an initial matter, this Court has previously held VDOC's grooming policy, as it pertains to beard length, to be facially valid, therefore this claim should be summarily dismissed.

VDOC Operating Procedure (OP) 864.1, Offender Grooming and Hygiene, establishes uniform personal grooming standards for offenders incarcerated in the VDOC to facilitate the

7

identification of offenders and promote safety, security and sanitation. Duncan Aff. ¶ 7. All VDOC offenders are permitted to grow a beard that is ¼-inch maximum in length. *Id.* In *Coleman v. Jabe*, this Court rejected Coleman's claim that VDOC's grooming policy violated his rights under RLUIPA because he was only permitted to grow a one-quarter inch beard but his religious beliefs require him to grow a longer beard. This Court held that VDOC's grooming policy permitting religious beards up to a quarter-inch "to be the least restrictive means of furthering their interests in safety and health." *Coleman v. Jabe*, Civil Action No. 7:11cv518, 2014 U.S. Dist. LEXIS 67971, at *13 (W.D. Va. May 16, 2014). Because VDOC's policy restricting beard length has recently been upheld by this Court, DePaola's claim must fail.

Furthermore, OP 864.1 is the least restrictive means of furthering a compelling governmental interest and is rationally related to a legitimate penological interest. As stated above OP 864.1 establishes uniform personal grooming standards for offenders incarcerated in the VDOC to facilitate the identification of offenders and promote safety, security and sanitation. Offenders are permitted freedom in personal grooming within the standards set forth in this procedure. Pursuant to OP 864.1, beards of one-quarter inch maximum length are permitted for all offenders in order to accommodate religious, medical, and secular reasons for beards. In addition to security concerns, positive identification of each offender is important in the event of escape from confinement. Offenders with long hair and beards can rapidly change their appearance so as to compromise the need for rapid identification. Even inside the prison, positive, quick identification of offenders facilitates the orderly operation of each facility. Further, security is of paramount importance in an institutional setting. Longer beards provide the offender with an additional place to hide contraband, which places staff and other offenders at serious risk.

8

For the reasons above, DePaola's claims regarding the growth of his beard should be summarily dismissed.

   2.   *Step Down Assignment*

DePaola's remaining claims under the First Amendment and RLUIPA all concern VDOC's policies and procedures regarding his Step Down assignment and his alleged access to certain "privileges." Specifically, DePaola complains about not being able to attend weekly Jum'ah services, loss of television privileges, and receipt of barber services. Because DePaola does not have a constitutional right to television or barber services, his claims should be dismissed. Furthermore, because his assignment to segregation does not affect his ability to observe his religion within his cell, these claims should also be dismissed.

DePaola is a Level "S" offender, which is a special purpose bed assignment used by ROSP for the protective care and custodial management of offenders. Duncan Aff. ¶ 4. He participates in the Step-Down Program at ROSP. *Id.* Security Level "S" is comprised of three management pathways: (1) Intensive Management (IM) Security Level "S," (2) Special Management (SM) Security Level "S," or (3) the Re-entry Unit (offenders with 24 months or less remaining on their sentence). Duncan Aff. ¶ 5.

DePaola is assigned to the IM Security pathway. Duncan Aff. ¶ 6. Offenders are assigned to the IM pathway if they have the potential for extreme and/or deadly violence. *Id.* They are reviewed and assigned to escalating privilege levels, and the various assignments are as follows: IM-0, IM-1, IM-2, and IM-SL6. *Id.* DePaola was most recently reviewed by the Institutional Classification Authority (ICA) on March 1, 2017. Duncan Aff. ¶ 12. It was noted that DePaola had completed the Challenge Series and the ICA recommended his continued

assignment to segregation, IM-2 housing status, pending review by the Dual Treatment Team. *Id.* at Enclosure C.

Offenders in segregation are permitted to shower and shave not less than three times a week. Barber services are offered monthly. Duncan Aff. ¶ 8. DePaola has been in compliance with the VDOC grooming standards and most recently received barber services on March 7, 2017. *Id.* Therefore, these allegations by DePaola should be dismissed.

Offenders assigned to a segregated housing assignment are limited in their out-of-cell activities. Duncan Aff. ¶ 9. Although segregation offenders may not attend group religious services, they may practice their faith in their cells. *Id.* ROSP has a Chaplain on staff for all religious requests including religious materials and religious guidance. *Id.* Offenders assigned to a segregated housing assignment may request that the Chaplain visit their cell for private worship and counsel. *Id.* at Enclosure B. For these reasons, this claim should be dismissed.

While there are no "communal" televisions in the housing pods of C-Unit, there are ways for offenders to earn money for a television. Duncan Aff. ¶ 10. There are incentives built into the Step-Down Program which we hope will motivate the offenders to participate and work toward long-term behavioral changes, new thought patterns and social skills. *Id.* Televisions are considered a privilege. *Id.* If an offender participates in the Challenge Series by working to reach established goals and remain infraction free, he may be considered for a pod job which would enable him to earn money for a personal television. *Id.*

According to Defendants' records, DePaola's television was confiscated in November 2015, when he was reduced to IM-0 status. Duncan Aff. ¶ 11. However, it was returned to him on April 29, 2016, after reaching IM-1 status on April 28, 2016. *Id.* Therefore, his complaints

10

regarding his television privileges and the alleged burden it imposed on his ability to exercise his religion should be dismissed as moot.

Because DePaola has failed to allege any type of constitutional deprivation received as a result of his Step Down assignment, his First Amendment and RLUIPA claims on this basis should be dismissed.

**B.      Fourteenth Amendment – Equal Protection**

The Equal Protection clause requires that persons similarly situated be treated alike. *Plyer v. Doe*, 457 U.S. 202 (1982). In order to state a claim for an equal protection violation, a plaintiff must demonstrate that he has been treated differently from others who are similarly situated and that the unequal treatment was the result of intentional discrimination. *Morrisson v. Garraghty*, 239 F.3d 648 (4th Cir. 2001). If the plaintiff does not make this threshold showing, the Court need not determine whether the alleged disparate treatment was justified under the appropriate level of scrutiny. *Ephraim v. Angelone*, 313 F. Supp. 2d 569, 573-74 (E.D. Va. 2003).

Here, Defendants have construed DePaola's equal protection claim to be arising from his Step Down assignment and his alleged loss of certain privileges as a result from that assignment. DePaola has failed to allege anywhere in his Complaint that he has been treated differently than any other offender assigned to segregation at ROSP, or that the policies or procedures implemented by VDOC have been applied to him any differently than they are to any other offender. As previously stated, DePaola has received all VDOC services and privileges in accordance with the VDOC policies and procedures. Therefore, DePaola fails to make a threshold showing that his treatment was the result of intentional discrimination.

11

There is no evidence that shows any intentional discrimination against segregation offenders, or against DePaola based on religious beliefs. Since DePaola did not make this threshold showing, the Court need not determine whether the alleged disparate treatment was justified under the appropriate level of scrutiny. *Ephraim v. Angelone*, 313 F. Supp. 2d 569, 573-74 (E.D. Va. 2003). Accordingly, DePaola has not shown an equal protection violation.

## **DEFENDANT SUED IN HIS OFFICIAL CAPACITY**

To the extent that DePaola is attempting to bring a suit under § 1983 against Defendants in their official capacity for monetary damages, this is not cognizable in § 1983. Neither a state nor its officials acting in their official capacities are persons for purposes of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Therefore, to the extent that DePaola is suing Defendants in their official capacity, they are immune from suit in this matter. *Id*. The Eleventh Amendment similarly bars suits for damages against Defendant in his official capacity. *Madison v. Virginia*, 474 F.3d 118 (4th Cir. 2006).

## **DAMAGES UNDER RLUIPA**

Likewise, the Eleventh Amendment bars suits for damages against Defendants in their official capacity. *Madison v. Virginia*, 474 F.3d 118 (4th Cir. 2006). DePaola may not obtain damages from Defendants in their individual capacity either. *Rendelman v. Rouse*, 569 F.3d 182 (4th Cir. 2009). Accordingly, DePaola's claims for damages advanced under RLUIPA against Defendants must be dismissed.

## **QUALIFIED IMMUNITY**

To the extent that DePaola might be attempting to request damages, Defendants are entitled to the defense of qualified immunity, there being no allegations of conduct which violate clearly established statutory or constitutional rights of which a reasonable person would have

12

known.  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Qualified immunity involves a two step inquiry: whether a constitutional or statutory right would have been violated on the alleged facts; and whether the right was clearly established.  *Saucier v. Katz*, 533 U.S. 194 (2001).  The court has the discretion to proceed directly to the second step of the *Saucier* analysis after assuming without deciding that a constitutional violation occurred.  *Pearson v. Callahan*, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

Even assuming that there is a substantial burden, Defendants clearly did not transgress any "bright lines" and would have no reason to know that they were impinging on any right of DePaola by enforcing VDOC policies and procedures.  Therefore, assuming that there was any violation of a constitutional right, Defendants would be entitled to qualified immunity.

WHEREFORE, Defendants respectfully request this Court enter summary judgment on their behalf.

Respectfully submitted,

H. CLARKE, A.D. ROBINSON, E.R.
BARKSDALE, A. GALLIHAR, W. SWINEY,
D. STILL, A. DUNCAN, J.G. LYALL and
R. STANLEY

By: s/ Jessica J. Berdichevsky
Jessica J. Berdichevsky, AAG, VSB #80015
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
Phone:  (804) 371-4482
Fax:  (804) 786-4239
E -mail:  jberdichevsky@oag.state.va.us

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of April, 2017, I electronically filed the foregoing Memorandum in Support of Defendants' Motion for Summary Judgment using the CM/ECF system which will send notification of such filing to the following: N/A

And I hereby certify that I have mailed by UPS Ground Service the document to the following non-CM/ECF participant: Eric DePaola, #1145137, Red Onion State Prison, 10800 H. Jack Rose Highway, Pound, VA 24279.

s/ Jessica J. Berdichevsky
Jessica J. Berdichevsky, AAG, VSB #80015
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
Phone: (804) 371-4482
Fax: (804) 786-4239
E-mail: jberdichevsky@oag.state.va.us