# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **ERIC DePAOLA,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:16CV00485 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **H. CLARKE, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Eric DePaola, Pro Se Plaintiff; Richard C. Vorhis, Office of the Attorney General, Richmond, Virginia, for Defendants Clarke, Robinson, Barksdale, Gallihar, Still, Duncan, Lyall, and Stanley; and Jeremy B. O'Quinn, The O'Quinn Law Office, PLLC, Wise, Virginia, for Defendant Fleming.*

The plaintiff, Eric DePaola, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. DePaola asserts that two Virginia Department of Corrections ("VDOC") regulations, and the defendants' application of them, placed a substantial burden on his religious beliefs that require him to maintain a beard and to participate in weekly group services. After review of the record and the parties' cross motions for summary judgment, I conclude that DePaola's motion must be denied and the defendants' motions must be granted in part and denied in part.

## I. Background.

The summary judgment record contains the following factual background and allegations of the parties. Under familiar principles, I will recite disputed facts in the light most favorable to the nonmoving party.

DePaola is confined in segregation at Red Onion State Prison ("Red Onion"). He has been participating in the VDOC's Segregation Reduction Step-Down Program ("Step-Down Program") that permits a long-term segregation inmate to earn additional privileges when evaluators determine that he has met certain behavioral goals. VDOC Operating Procedure ("OP") 830.A governs the Step-Down Program. DePaola is assigned to the Intensive Management ("IM") pathway of the program. An inmate is assigned to the IM pathway if he is found to "have the potential for extreme and/or deadly violence." Mem. Supp. Defs.' Mot. Summ. J. Duncan Aff. ¶ 6, ECF No. 27-1. All IM inmates are housed in single-person cells and are shackled and escorted by two correctional officers whenever they leave or return to the cell. They receive one hour of outside recreation per day in a recreation cage and three showers per week along with other limited privileges. The steps in the IM pathway are IM-0 (most restrictive privileges), IM-1, and IM-2. For example, an IM-0 inmate cannot possess and use a personal television in his cell, but will be permitted this privilege when he earns advancement to IM-1 or IM-2.

A VDOC written procedure, OP 864.1, Offender Grooming and Hygiene, establishes uniform personal grooming standards for all inmates in order to facilitate the identification of offenders and promote safety, security and sanitation. During the events in question in this case, OP 864.1 prohibited inmates from wearing beards longer than one-quarter inch.[1] OP 864.1 provides that "[f]acilities should ensure that adequate hair care or barbering services are accessible to all offenders, regardless of housing status, so that they are able to maintain compliance with the grooming standards." Pl.'s Mot. Summ. J. Ex. S, OP 864.1 at ¶ (IV)(G)(3).

Compliance with grooming standards and avoiding institutional infractions are behaviors on which Step-Down Program inmates are rated. Mem. Opp'n Defs.' Mot. Summ. J. Ex. C, ECF No. 44-2. Ratings of Good or Positive Effort on such behaviors are required for advancement in the Step-Down Program to earn additional privileges, while Poor or Incomplete ratings can result in reduction to a previous step and loss of privileges. *Id.*, Ex. A, ECF No. 44-2.

DePaola states that his Muslim faith requires him to maintain a beard "as mandated by the holy Quran and Hadites" and to participate in a Jum'ah group

---

[1] The present version of this policy sets the maximum beard length at one-half inch.

-3-

service every Friday. Second Am. Compl. ¶¶ 22, 63, ECF No. 48-1.[2] Over the years, DePaola has regularly had a barber trim his beard to a length that complied with the VDOC grooming policy. During the fall of 2015, however, officials allegedly did not provide DePaola with barbering services for three months.[3] On November 3, 2015, Lieutenant L. G. Lyall notified DePaola that he was being reduced from IM-2 to IM-0 because his beard was not in compliance with the grooming policy, per order of supervisory defendants Gallihar, Swiney, and Still.[4] When DePaola explained the recent lack of barbering services, Lyall said DePaola should take that up with his God. Officers R. Stanley and J. T. Fleming[5] overheard and laughed, but did not intervene. Instead, they confiscated DePaola's television from his cell, consistent with his newly assigned IM-0 status. At IM-0, DePaola could not have a radio, MP3 player, or video visits, and was permitted fewer telephone calls, library books, and commissary purchases than at level IM-2.

---

[2] Because the Second Amended Complaint is nearly identical to the Amended Complaint on which the defendants filed their motions for summary judgment, I will grant DePaola's motion seeking leave to file it and consider the defendants' motions as addressing the claims therein raised.

[3] The defendants' evidence is that barbering services are offered to segregation inmates monthly. Duncan Aff. ¶ 8, ECF No. 27-1.

[4] At the time of this incident, A. Gallihar was Chief of Housing and Programs; and Walter Swiney and D. Still were Unit Managers.

[5] DePaola has sometimes identified this defendant as Flemings, but the defendant's submissions indicate that the proper spelling is Fleming, as reflected on the docket.

Several hours later, an officer served DePaola with a disciplinary charge for disobeying an order to comply with the grooming policy. The Disciplinary Report stated the factual basis for the charge as follows: "While making rounds in C-5 pod l observed that offender DePaola had a goatee several inches long. The offender is not in compliance with DOP 864. Charged per DOP 861.1." Mem. Opp'n Defs.' Mot. Summ. J. Ex. L, at 23, ECF No. 44-2. The day before the hearing on this charge, Lyall ordered Depaola to shave his beard off. DePaola explained that shaving the beard off instead of having it trimmed by a barber would violate his religious beliefs. Lyall allegedly said that DePaola's religion did not matter, that the prison did not have a barber, and that DePaola should shave or he would be found guilty of the charge. To avoid a disciplinary conviction, DePaola shaved his beard. Thereafter, the disciplinary charge was dismissed. DePaola then asked to have his IM-2 status restored, explaining that his initial noncompliance with OP 864.1 had occurred only because he had not had access to barbering services for three months. Gallihar, Swiney, and Still met on this request, but decided DePaola should remain at IM-0 with its reduced privileges, because he had been receiving poor ratings for noncompliance with OP 864.1 and had shaved only the day before the scheduled hearing.

In keeping with his religion, DePaola began growing his beard again and continued to ask for barbering services to comply with OP 864.1. Again, officers

threatened him with a disciplinary charge for noncompliance if he did not shave, so he shaved. In this way, over the next several months, DePaola states that he felt pressured repeatedly to shave off his beard in violation of his religious beliefs to avoid a disciplinary charge in hopes of regaining IM-1 or IM-2 privileges. He claims that his IM-2 privileges were not restored until November 9, 2016.

DePaola alleges that OP 864.1 and OP 830.A "are not equally applied & are often utilized to target certain prisoners." Second Am. Compl. ¶ 31, ECF No. 48-1. Two other segregation inmates have filed affidavits in support of this claim, stating that they have violated the grooming standards for months at a time without receiving a disciplinary charge. Mem. Opp'n Defs.' Mot. Summ. J. Ex. D, E, ECF No. 44-2. They express their belief that unspecified prison officials target inmates, like DePaola, who frequently file grievances and lawsuits, and give them poor behavior ratings or file disciplinary charges against them for grooming policy violations, while not poorly rating or charging others for the same conduct.

DePaola's reduction to IM-0 also prevented him from participating in Jum'ah. As a segregation inmate, DePaola cannot physically attend any group service. However, Red Onion provides a televised version of Jum'ah that such inmates with personal televisions may watch. DePaola's IM-2 privileges included use of his personal television to watch Jum'ah in his cell. While he was in IM-0 status his privileges did not include use of his television and thus prevented his

participation in Jum'ah services between November 3, 2015, and May 28, 2016, in violation of his religious beliefs. Second Am. Compl. ¶ 72, ECF No. 48-1. Although a communal television was present in DePaola's pod during this period,[6] officials did not broadcast the Jum'ah service on that device as VDOC policy required them to do.[7] DePaola notified Warden Barksdale, Duncan, Gallihar, Swiney, and Still of his religious belief requiring participation in the weekly Jum'ah service and asked to be permitted to watch it on the communal television in the pod, but did not receive any assistance.

DePaola's Second Amended Complaint names as defendants VDOC Director Harold Clarke, Chief of Operations A. David Robinson, Barksdale, Gallihar, Swiney, Still, Duncan, Lyall, Fleming, and Stanley. Liberally construed, DePaola makes two claims: (1) the relevant policies OP 864.1 and OP 830.A, are applied differently to inmates who, like him, file grievances and lawsuits, which violates the Equal Protection Clause of the Fourteenth Amendment; and (2) these policies substantially burdened and continue to burden his right to free exercise of his sincere religious beliefs (a) to wear a beard and (b) to participate in a weekly

---

[6] To the contrary, Duncan's Affidavit, signed March 13, 2017, states that the housing pods of C Unit do not have "communal" televisions. Duncan Aff. ¶ 10, ECF No. 27-1.

[7] Attachment #1 to OP 830.A, the Step-Down Program procedure, appears to indicate that inmates at all levels of the IM pathway will be provided a communal television, "mounted on pod wall" to watch education and religious programming. Mem. Opp'n Defs.' Mot. Summ. J. Ex. C, ECF No. 44-2.

Jum'ah service, in violation of the First Amendment and RLUIPA. DePaola seeks monetary damages and declaratory and injunctive relief.

The case is is ripe for disposition of the parties' motions.[8]

## II. DISCUSSION.

### A. Standard of Review.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For the materiality inquiry, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In separately considering the summary judgment motions, I must draw all reasonable inferences from the facts in favor of the nonmoving party. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

### B. Equal Protection Claim.

The Equal Protection Clause generally requires the government to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473

---

[8] I will grant DePaola's motion seeking to supplement his evidence offered in opposition to the defendants' motions, and to have all of his exhibits and opposition arguments considered as part of his Motion for Summary Judgment.

U.S. 432, 439 (1985). It "does not take from the States all power of classification, but keeps governmental decision-makers from treating differently persons who are in all relevant respects alike."[9] *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Thus, to prove an equal protection claim, an inmate "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Id.* He must next show that the policy is not "reasonably related to any legitimate penological interests." *Id.* at 732. DePaola's equal protection claim fails on the first and second parts of this standard.

DePaola's claim is that officers bring disciplinary charges or give poor behavior ratings for grooming policy violations against Level S inmates who file many grievances and/or civil rights law suits, but ignore grooming violations by other inmates. In support, however, he and his affiants offer nothing more than mere conclusory assertions on these issues. Other IM status inmates they describe who violated the grooming policy for months with disciplinary charges may already have received the one permitted charge for noncompliance. Moreover, no evidence shows that the same defendants who penalized DePaola for violating the grooming policy, also *failed* to give poor behavior ratings or brought disciplinary charges against other IM status inmates for noncompliance after failing to provide

---

[9] I have omitted internal quotation marks, alterations, or citations here and throughout this opinion, unless otherwise noted.

-9-

them access to a barber. DePaola also presents no evidence that the defendants were motivated to penalize him as they did because of his past complaints and litigation efforts or that they even knew of his previous grievances and lawsuits. Thus, he fails to present any genuine material fact on which he could prove dissimilar treatment or purposeful discrimination against him by the defendants. In short, DePaola's generalizations, unsupported by particular facts, do not state any constitutional claim of unequal treatment. *See Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992) (holding that party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat motion for summary judgment). Accordingly, I will grant summary judgment for the defendants, and deny DePaola's motion, as to his equal protection claim.

### C. Facial Challenge to Policies.

The traditional rule is that "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 38 (1999). "[C]onstitutional rights are personal and may not be asserted vicariously." *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973). "Constitutional judgments are justified only out of the necessity of adjudicating rights in particular cases between the litigants brought before the Court." *Id.* at 611.

I do not find that DePaola has standing to bring a facial challenge to the policies at issue because, on the facts presented in this action, these policies may lawfully be applied to him without violating his religious rights. As written, the policies permit DePaola to comply with the religious beliefs he has espoused in this lawsuit. In his sworn pleadings, DePaola states that his beliefs require him to wear a beard and that he had been able to comply with his beliefs at Red Onion by keeping the beard trimmed to meet the length requirements of OP 864.1. That policy also requires prisons to make barbering services available so inmates can comply with the grooming standards. OP 864.1(IV)(G)(3). So long as DePaola could avail himself of such services, he did not receive any disciplinary charge or poor behavior ratings in the Step-Down Program for noncompliance with the beard length standard. Under the policies as written, then, he was not, and will not in the future, be pressured to violate his stated religious belief to wear a beard. Therefore, I will grant summary judgment for the defendants, and deny it for DePaola, as to any claim that OP 864.1 and OP 830.A as now written are unconstitutional or in contradiction of RLUIPA.

### D. First Amendment Claims.

Under the Free Exercise Clause of the First Amendment, prison officials must reasonably accommodate an inmate's exercise of his sincerely held religious beliefs. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987). To prove a

violation of this right, an inmate must first state facts sufficient to show that the challenged prison regulation substantially burdens his right to free exercise of a sincerely held religious belief. *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). In this context, "a substantial burden is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* Forcing an inmate to choose between exercising his religious beliefs or facing "serious disciplinary action" places a substantial burden on that inmate's religious practice. *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015).

Because "courts are ill equipped to deal with the increasingly urgent problems of prison administration," *Procunier v. Martinez*, 416 U.S. 396, 405 (1974), they must defer to the expertise of prison officials in crafting policies addressing those problems, such as security, discipline, and efficient use of limited resources. Therefore, a prison regulation that substantially burdens inmates' religious practices is, nevertheless, "valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The court's analysis under *Turner* must consider four factors: (1) "whether there is a valid, rational connection between the prison regulation" and the asserted government interest; (2) whether DePaola was deprived of all forms of religious exercise or was able to participate in other observances of his faith; (3) "what impact the desired accommodation would have on security staff, inmates, and the allocation of

prison resources"; and (4) "whether there exist any obvious, easy alternatives to the challenged regulation," which may indicate that it is an exaggerated response. *Id.* at 200.

The defendants' motions for summary judgment do not question that DePaola's practices of wearing a beard and participating in Jum'ah are both sincerely held and rooted in religious belief. I also conclude that DePaola has presented genuine issues of material fact on which he could persuade a fact finder that the defendants' application of OP 864.1 and OP 830.A to him as described in this case substantially burdened those beliefs. According to DePaola, without a barber to keep his beard at the required length, he could not comply with OP 864.1, but was, nevertheless, penalized under OP 830.A by the reduction to IM-0. In IM-0, he could not use his personal television to participate in Jum'ah for several months. To earn his way back to IM-1 or IM-2 to regain his Jum'ah participation rights, DePaola felt pressured to violate his beliefs and shave off his beard for several months to avoid disciplinary charges and poor behavior ratings as required to meet step down policy goals. The forced choice between practicing his beliefs or violating them to avoid serious disciplinary sanctions and regain his IM-2 privileges meets the standard for substantial burden in this context. *Holt*, 135 S. Ct. at 862.

DePaola has also presented material facts potentially sufficient to persuade a fact finder that no legitimate penological purpose was furthered by disciplining him, as a segregation inmate, under OP 864.1 or OP 830.A for noncompliance with grooming standards when he had had no access to barbering services. He was alone in his cell and left it only in full restraints with two escorting officers. The defendants offer no evidence that in these circumstances, his slightly longer than standard beard posed a threat to identification, security, safety, or sanitation, the penological interests they assert in defense of the grooming policy as applied to inmates in the general population setting. A material dispute also remains over the access to barber services during the time periods in question.

Moreover, the penalty imposed on DePaola for grooming violations under OP 830.A — a two-step reduction and loss of his personal television and Jum'ah practice for months, with no communal television option for religious services — may be found to be an unnecessary response to whatever risk his untrimmed beard might pose. Under DePaola's version of the facts, the authorities could have simply withheld punishment for beard length violations until barbering services were available to allow DePaola to comply with OP 864.1 and OP 830.A, thus allowing him to maintain his beard as his religious beliefs required. For these reasons, I conclude that the defendants' motions for summary judgment fail under

the first and fourth *Turner* factors on DePaola's First Amendment claims for monetary damages and prospective relief against defendants.[10]

Taking the evidence in the light most favorable to the defendants, however, I will deny DePaola's Motion for Summary Judgment on his First Amendment claims. The defendants assert that barbering services are provided regularly. In addition, I note that simple beard length is not the only restriction included in the grooming policy, which prohibits beards covering only part of the face, as a goatee does. Thus, I cannot find that DePaola has shown the absence of material disputes of fact or that he is entitled to summary judgment as a matter of law on the First Amendment claims.

I must grant summary judgment for the defendants, and deny it to DePaola, on any First Amendment claim for monetary damages against the defendants in their official capacities for past violations. Such relief is not available under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989).

I must also grant the defendants' motions, and deny DePaola's motion, as to his contentions that the defendants' failure to provide barbering services and their

---

[10] The defendants argue that DePaola's claims for prospective relief are moot, because he has been in compliance with OP 864.1 for months and since being restored to IM-1 status, he has been able to view the televised Jum'ah service. The fact that the defendants are no longer forcing DePaola to shave his beard and advanced him to a step assignment at which he could use his television does not prove that a similar barber shortage in the future could not reoccur and produce the same results that DePaola alleges he experienced in 2015 and 2016. *See, e.g., Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014) (holding that where defendants have not presented evidence establishing that challenged practice cannot recur, plaintiff's claims for injunctive relief are not moot).

failure to broadcast Jum'ah on a communal television violated VDOC policies. State officials' failure to abide by state procedural regulations is not actionable under § 1983. *Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").

### E. RLUIPA Claims.

RLUIPA provides federal statutory protection of prisoners' religious exercise under a stricter legal standard that the First Amendment. "RLUIPA prohibits [state] prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden furthers a compelling governmental interest by the least restrictive means." *Miles v. Moore*, 450 F. App'x 318, 319 (4th Cir. 2011) (unpublished) (citing 42 U.S.C. § 2000cc-1(a)). Once the inmate has shown a substantial burden on his religious practice, the evidentiary burden shifts to the prison officials to prove that the challenged policy or action "furthers a compelling governmental interest by the least restrictive means." *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015).

DePaola's claims for monetary damages under RLUIPA for events in 2015 and 2016 fail, because such relief is not available under RLUIPA. *See, e.g., Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011) (finding damages not recoverable against defendants in their official capacities under RLUIPA); *Rendelman v.*

*Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (finding no RLUIPA claim for damages available against defendants in their individual capacities). Therefore, I will deny DePaola's motion and grant summary judgment for the defendants on all RLUIPA claims for monetary damages.

I will deny the parties' motions as to DePaola's RLUIPA claims for declaratory and injunctive relief, however. As discussed, DePaola has presented genuine issues of material fact regarding the substantial burden placed on his sincere religious beliefs by the defendants' actions in 2015 and 2016. Taking his evidence as true, the defendants essentially punished him with reduced privileges for a year for failing to cut his beard when they had not provided barbering services, continued to pressure him to violate those beliefs, and deprived him of another religious practice altogether, by confiscating his television and providing no other means for his Jum'ah participation for months. The defendants simply have not established that these actions furthered a compelling penological interest by the least restrictive means. Defendants also have not established that these circumstances could not reoccur. *Wall*, 741 F.3d at 497.

F. Appropriate Defendants.

The Second Amended Complaint does not state facts on which a reasonable factfinder could conclude that defendants Clarke and Robinson had any personal involvement in applying OP 864.1 or OP 830.A to DePaola. *See Vinnedge v.*

-17-

*Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (finding that "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights). Thus, I find that these defendants are entitled to summary judgment. I find, however, that DePaola has alleged sufficient facts about the personal involvement of other defendants to survive summary judgment, namely that they ordered the application of the policies to DePaola or failed to prevent or correct this deprivation of his religious rights after being made aware of it through direct conversations or grievances and appeals.

### III. SUMMARY.

In summary, I find that that summary judgment should be granted against DePaola as to his equal protection claim; his claim that OP 864.1 and OP 830.A are unconstitutional or violative of RLUIPA; his claim for money damages against the defendants in their official capacities; his claim for money damages under RLUIPA; and for all claims against defendants Clarke and Robinson. There remain material facts in dispute that govern the resolution of the remaining issues in this case. Those factual disputes are as follows:

(1) Did in fact any of the defendants Barksdale, Gallihar, Swiney, Still, Duncan, Lyall, Fleming, and Stanley fail to provide barber services to plaintiff DePaola in 2015 and 2016, or did not prevent or correct such failure, and thereby prevented DePaola from adhering to sincerely held religious beliefs?

-18-

(2) Was in fact any punishment or loss of privileges imposed on DePaola for failure to comply with the applicable grooming policy so disproportionate to legitimate penal needs, so as to violate DePaola's sincerely held religious beliefs?

(3) If DePaola's religious rights were violated, what monetary damages or injunctive relief, if any, should be awarded?

IV.  CONCLUSION.

In accordance with the foregoing, it is **ORDERED** as follows:

1. DePaola's Motion for Leave to File a Second Amended Complaint (ECF No. 48) is GRANTED;

2. DePaola's "Motion to Supplement Plaintiff's Response in re to Defendants' Motion[s] for Summary Judgment" (ECF No. 50), is GRANTED;

3. DePaola's Motion for Summary Judgment (ECF No. 51) is DENIED;

4. The defendants' Motions for Summary Judgment (ECF Nos. 26 and 37) are GRANTED IN PART AND DENIED IN PART;

5. The clerk will terminate defendants Clarke and Robinson as parties; and

6. There having been no demand for a jury trial, the case is referred to the Honorable Pamela Meade Sargent, United States

-19-

Case 7:16-cv-00485-JPJ-PMS   Document 56   Filed 03/30/18   Page 19 of 20   Pageid#: 351

Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for conduct of further proceedings, including a bench trial, and submission of proposed findings of fact and a recommended disposition.

    ENTER: March 30, 2018

    /s/ James P. Jones
    United States District Judge