IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

ERIC DePAOLA,

    Plaintiff,

v.                                  Civil Action No. 7:16CV485

H. CLARKE, *et al.*,

    Defendants.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO
THE FEBURARY 5, 2019 REPORT AND RECOMMENDATION**

E. R. Barksdale, A. Gallihar, W. Swiney, A. Duncan, D. Still, J. G. Lyall, and R. Stanley ("Defendants"), by counsel and pursuant to Federal Rule of Civil Procedure 72, submit the following response to Plaintiff Eric DePaola's Objections to the February 5, 2019 Report and Recommendation ("Objections," ECF No. 138).

**Argument**

It is difficult to discern which portions of DePaola's "Objections" were not copied and pasted from his previously submitted Proposed Findings of Fact and Conclusions of Law ("Proposed Findings," ECF No. 135.) Pages 14 through 22 of DePaola's Objections appear to be taken verbatim from pages 24 through 32 of DePaola's Proposed Findings. Instead of filing *specific* objections to the Honorable Pamela Meade Sargent's *Report and Recommendation*, DePaola has re-filed his Proposed Findings seeking to re-litigate each Defendant's liability. DePaola has therefore failed to object to Judge Sargent's Report and Recommendation with the specificity required by The Magistrates Act and Federal Rule of Civil Procedure 72. Nonetheless, the undersigned has responded to DePaola's Objections in those instances where he objected with the most specificity to dispute Judge Sargent's findings. *See infra* Part III.

1

## I. Because DePaola failed to make specific objections to Judge Sargent's Report and Recommendation, he failed to object at all.

Rule 72(b) permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations. *See also* 28 U.S.C. § 636(b)(1). The United States Court of Appeals for the Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2013).

"General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection." *Moon v. BWX Technologies, Inc.,* 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), *aff'd,* 498 F. App'x 268 (4th Cir. 2012). "A plaintiff who reiterates his previously-raised arguments will not be given the second bite at the apple [ ]he seeks; instead, his re-filed brief will be treated as a general objection, which has the same effect as would a failure to object." *Formica v. Superintendent of Cent. Virginia Reg'l Jail*, No. 7:14CV00357, 2015 WL 5561952, at *2 (W.D. Va. Sept. 21, 2015) (internal quotation marks omitted).

As this Court has explained*:*

> Allowing a litigant to obtain de novo review of h[is] entire case by merely reformatting an earlier brief as an objection mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.

*Veney v. Astrue*, 539 F. Supp. 2d 841, 846 (W.D. Va. 2008) (alterations in original) (internal citations omitted).

On November 28, 2018, DePaola submitted to the Court his Proposed Findings. (ECF No. 135.) On February 5, 2019, Judge Sargent issued her Report and Recommendation. (ECF

No. 137.) On February 19, 2019, DePaola filed his "objections" to Judge Sargent's Report and Recommendation. (ECF No. 138.) DePaola's Objections appear to be largely copied and pasted from his Proposed Findings. For example, pages 14 through 22 of DePaola's Objections appear to be taken verbatim from pages 24 through 32 of DePaola's Proposed Findings. (*See* ECF No. 135, at 24-32; ECF No. 138, at 14-22.) Clearly DePaola has failed to file specific objections to Judge Sargent's Report and Recommendation. *Veney*, 539 F. Supp. 2d at 846 (concluding objections that were "almost [a] verbatim copy of the 'Argument' section of Plaintiff's previously filed summary judgment brief" were not specific within the meaning of Rule 72). Defendants therefore request that the Court find DePaola's Objections lack the specificity required under Rule 72 and The Magistrates Act.

## II. At best, DePaola raises two general objections.

In the section of his Objections titled, "SUMMARY OF OBJECTIONS," DePaola appears to object to both of Judge Sargent's ultimate conclusions that: (i) the Defendants did not purposefully deny DePaola barber services; and (ii) that barber services would have been made available to allow DePaola to comply with the grooming policy had DePaola asked. (Objections, ECF No. 138, at 4.) DePaola avers that these conclusions are wrong because "the trial record" demonstrates otherwise. (*Id.*) DePaola's objections are, at best, general. DePaola also confuses § 1983's requirement of "personal involvement" with First Amendment and Religious Land Use and Institutionalized Persons Act's ("RLUIPA") state-of-mind requirements.

### a. DePaola's objections to Judge Sargent's ultimate conclusions are general objections.

Rule 72 and The Magistrates Act "does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to

3

review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'" *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2013) (citation omitted) (emphasis in original). As stated above, "[g]eneral objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection." *Moon,* 742 F. Supp. 2d at 829.

DePaola's assertion that Judge Sargent's two ultimate conclusions are incorrect because "the trial record" establishes otherwise are general objections. Instead of citing to specific portions of Judge Sargent's Report and Recommendation that DePaola considers incorrect, he instead seeks to re-litigate each Defendant's individual liability as obvious from his headings titled "Each Defendant Is Liable Under Section 1983," "Each Defendant Is Also Liable Under RLUIPA," and "THE COURT SHOULD ADOPT MR. DEPAOLA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW." (*Id*. at 8-22.) DePaola's Objections are contrary to Rule 72 and The Magistrates Act. *Midgette*, 478 F.3d at 622. Defendants therefore request that the Court find DePaola failed to object to Judge Sargent's Report and Recommendation with the required specificity, and thus, he failed to object at all.

### b. *Throughout his Objections, DePaola ignores the required mens rea for finding First Amendment and RLUIPA liability.*

DePaola generally objects to Judge Sargent's ultimate conclusion that the Defendants did not "purposely deny" DePaola barber services. (Objections, ECF No. 138, at 12-14.) DePaola argues that "Section 1983 does not depend on establishing that the Defendants intentionally violated Mr. DePaola's rights; only that the Defendants 'had personal knowledge of and involvement in' the failure to provide Ms. DePaola barber services." (*Id*. at 13 (citation

4

omitted)). But DePaola ignores the *mens rea* required for finding First Amendment and RLUIPA liability.

DePaola is correct that liability under § 1983 requires a showing of "personal involvement" by each defendant. But DePaola is incorrect that personal involvement is *all* that is required for a finding of liability under § 1983. The constitutional amendment underlying a plaintiff's § 1983 cause of action dictates what specific state-of-mind is required for liability. Simply put, different constitutional provisions have their own state-of-mind requirements. *See e.g.*, *Farmer v. Brennan,* 511 U.S. 825 (1994) (explaining that violations of the Eighth Amendment require a showing of deliberate indifference under § 1983).

For claims brought pursuant to the First Amendment, the Fourth Circuit has stated "only intentional conduct is actionable under the Free Exercise Clause." *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006). "[B]oth RLUIPA and the First Amendment require a showing of 'conscious or intentional interference' with plaintiff's rights." *Wall v. Wade*, 741 F.3d 492, 500 n.11 (4th Cir. 2014) (quoting *Lovelace v. Lee*, 472 F.3d 174, 194 (4th Cir. 2006)). "[N]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause." *Lovelace*, 472 F.3d at 201. "[A]llowing negligence suits to proceed under RLUIPA would undermine [due] deference by exposing prison officials to an unduly high level of judicial scrutiny." *Id*. at 194.

Because an intentional state-of-mind finding is required for First Amendment and RLUIPA liability, Judge Sargent did not err. DePaola does not argue there is any evidence to *rebut* Judge Sargent's finding that the Defendants' did not purposely deny DePaola barber services—only that an intentionality requirement is not required for liability under § 1983.

5

Judge Sargent therefore correctly found that the Defendants did not purposely deny DePaola barber services. (Rep. & Rec., ECF No. 137, at 29.)

> **III. Even assuming that DePaola objected with the required specificity, DePaola distorts the evidence presented before Judge Sargent.**

The following addresses the most specific arguments advanced by DePaola in the few instances in which he cites to portions of Judge Sargent's Report and Recommendation to dispute her findings.

> *a. The evidence supports Judge Sargent's finding that Defendant Lyall did not purposely deny DePaola barber services.*

DePaola seems to object with the most specificity to Judge Sargent's finding that Defendant Lyall did not purposely deny DePaola barber services. (*See* Objections, ECF No. 138, at 6.) As an initial matter, and as explained above, Judge Sargent did not err when she found that none of the Defendants "purposely den[ied]" DePaola barber services. Contrary to DePaola's assertions, an intentional state-of-mind finding is required for First Amendment and RLUIPA liability. Moreover, DePaola does not argue there is any evidence to *rebut* Judge Sargent's finding that none of the Defendants purposely denied DePaola barber services. Therefore, Judge Sargent correctly found that none of the Defendants, including Defendant Lyall, purposely denied DePaola barber services, which as explained below, is supported by the record.

DePaola argues: (1) that Defendant Lyall denied DePaola barber services by responding "there is no barber" when DePaola informed Defendant Lyall that he is a Muslim and so cannot shave on November 3, 2015 (Objections, ECF No. 138, at 9); and (2) that like Judge Sargent's Report and Recommendation, Defendant Lyall "wrongly construed" Mr. DePaola's statement that he is a Muslim "to be 'a refusal to comply' with the VDOC grooming policy." (*Id*. at 10, 22.)

6

### *i. Barber services were available to DePaola and Defendant Lyall did not tell DePaola otherwise.*

DePaola argues that Defendant Lyall denied DePaola barber services by responding "there is no barber" when DePaola informed Lyall that he is a Muslim and cannot shave on November 3, 2015. (Objections, ECF No. 138, at 9.) However, a review of the transcript reveals that the exchange cited by DePaola was on cross-examination and it is *DePaola himself* who testified that Defendant Lyall replied "there is no barber" in response to DePaola's statements about being a Muslim on November 3, 2015. (*See* Oct. 16, 2018 Tr. 107.) The only evidence to support DePaola's version of events is DePaola's own testimony. Defendant Lyall did not testify that he told DePaola a barber was not available on November 3, 2015. Rather, Defendant Lyall testified that after informing DePaola that he needed to come into compliance with the grooming policy on November 3, 2015, DePaola "became argumentative, said it was -- I believe he said it was against his religion. Religious beliefs. I took that for a refusal." (Oct. 16, 2018 Tr. 261.) Contrary to DePaola's representations to the Court, Defendant Lyall did not testify that "there is no barber."

Moreover, although DePaola generally argues throughout this Objections that "there was no barber" available and "there was no barber employed" for DePaola's housing pod, (Objections, ECF No. 138, at 7, 10), these statements seriously distort the evidence presented before Judge Sargent. It is undisputed that during the relevant time period, DePaola was housed in the C-building, pod number 5. Judge Sargent summarized the evidence presented on the issue of barber availability in DePaola's housing pod as follows:

> [Defendant] Gallihar testified that he had pulled information from the VDOC CORIS database to provide a list of inmates who had worked as barbers in [DePaola's] C Building at Red Onion during 2015 and 2016. (Plaintiff's Exhibit No. PX-121. Docket Item No. 121-16.) Gallihar admitted that, according to this list, there was no barber working in the C-5 pod at Red Onion from April 27,

7

> 2015, to December 13, 2015. Nonetheless, Gallihar testified that, while inmate Hicks was listed as the barber for only the C-6 pod from May 18, 2015, to December 13, 2015, Hicks performed barbering services in other pods during this period of time. He said that, if a pod was missing a barber, a barber would be pulled from another pod to perform services. Gallihar said that the C-5 Building missed barber services for only a couple of weeks in 2015. . . .
>
> Gallihar testified that the [barber] logbook showed that DePaola received barber services in October and November 2015 and January 2016 and that he refused barber services in December 2015.

(Rep. & Rec., ECF No. 137, at 14); *see also infra* Part II.b.

DePaola misrepresents the evidence presented before Judge Sargent and relies on his own testimony to argue that Defendant Lyall violated his religious rights. The only evidence that supports DePaola's version of events that Defendant Lyall told him on November 3, 2015 that "there is no barber" is DePaola's testimony. Further, the evidence presented on the issue of barber availability in DePaola's housing pod makes clear that barber services were made available to pod 5 inmates because inmate barbers were pulled from other pods in the C-building.

### ii. "Wrongly constru[ing]" a communication is not an intentional act and Defendant Lyall is therefore not liable under the First Amendment and RLUIPA.

DePaola next argues that Defendant Lyall violated DePaola's religious rights because "Defendant Lyall testified that he construed Mr. DePaola's statement that he was a Muslim and could not shave to be 'a refusal to comply' with the VDOC grooming policy. . . . The Report and Recommendation makes this same mistake." (ECF No. 138, at 7.) DePaola further argues that

> Of course, explaining that he cannot shave with a safety razor (because doing so would force him to shave his beard off completely) is not a refusal to comply with the VDOC grooming policy, much less a justification for severe punishment; it is simply Mr. DePaola asking to be allowed to trim his beard in order to comply with his religious obligations as a Muslim. (*Id.*)

DePaola attempts to split hairs by claiming that his response to Defendant Lyall on November 3, 2015 was an explanation that he cannot shave with a safety razor rather than a

8

refusal to comply with the grooming policy. But it is entirely irrelevant what DePaola subjectively meant when he informed Defendant Lyall that he a Muslim and so he could not shave. As explained in-depth above, liability under the First Amendment and RLUIPA requires a showing of "'conscious or intentional interference' with plaintiff's rights." *Wall v. Wade*, 741 F.3d 492, 500 n.11 (4th Cir. 2014) (quoting *Lovelace v. Lee*, 472 F.3d 174, 194 (4th Cir. 2006)). DePaola argues that Defendant Lyall is liable under the First Amendment and RLUIPA for "wrongly constru[ing]" DePaola's response. (Objections, ECF No. 138, at 19.) But "wrongly constru[ing]" a communication is not an intentional act for which Defendant Lyall can be liable under the First Amendment and RLUIPA. Therefore, Judge Sargent, correctly found that Defendant Lyall did not purposely deny DePaola barber services.

Moreover, the record establishes that DePaola never affirmatively requested barber services from any of the Defendants. DePaola conceded that he did not submit a grievance about the alleged lack of barber services nor did he send a request for barber services prior to having his television set confiscated from him on November 3, 2015. (Oct. 16, 2015 Tr. 107-09.) The record therefore amply supports Judge Sargent's finding that none of the defendants purposely denied DePaola barber services because DePaola does not even allege that he raised the issue with any of the Defendants prior to that day.

### b. *At most, the evidence presented supports a finding of negligence.*

Judge Sargent concluded "that DePaola was not purposefully denied barber services by any defendant. The evidence does persuade me, however, that barber services were not made available to the inmates of the C-5 pod, including DePaola, as often as they should have been in 2015." (ECF No. 137, at 29.) At most, Judge Sargent's findings support a finding of negligence.

9

But because negligence is not actionable under § 1983 and RLUIPA, the Defendants are not liable. *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006).

The record establishes that in the months leadings up to November 2015, the unit manager for the C-building—where DePaola was housed—had let things "slide" in C-building. (Oct. 16, 2018 Tr. 209-10; Oct. 17, 2018 Tr. 219.) For example, Defendant Gallihar testified that he "noticed that several of the offenders had progressed too fast" in the Step-Down Program and that "several offenders on different privilege levels such as IM-0 or SM-0, some of them had obtained things that they [weren't] supposed to have, such as television sets too early in a privilege level." (Oct. 16, 2018 Tr. 210.) In late October, the C-building unit manager position became vacant. (Oct. 16, 2018 Tr. 209.) Therefore, Defendants Still and Swiney began splitting the duties of the C-building unit manager in addition to their own regular duties. (Oct. 16, 2018 Tr. 234.) Likewise, Defendant Lyall was "filling-in" in the C-Building. (Oct. 16, 2018. Tr. 252.) Shortly after taking over at least half of the responsibilities of the C-building in late October 2015, Defendant Still was making rounds because "[t]here was just a lot of things that [he] felt [he] had to fix." (Oct. 17, 2018 Tr. 219.) Defendant Still noticed that "several inmates" in the C-building had grown beards and expressed concern to Defendants Gallihar, Lyall, and Swiney that they were out of compliance with the grooming policy. (Oct. 17, 2018 Tr. 220-21.)

Defendant Gallihar testified that at the beginning of each month, staff should ask the inmate in each pod if he wants to receive barber services and then provide the service to the inmate(s) throughout the month to those who requested it by pulling the barber inmate when staff are able and when it is safe to so do. (Oct. 16, 2018 Tr. 208-09.) Defendant Gallihar further explained that barber services are not given at the same time to every inmate in each pod, but over a period of time as staff and security so allow and that the decision to pull inmates for

10

barber services are made by the staff in each building pod. (Oct. 16, 2018 Tr. 209.) Defendant Gallihar also explained that each building has a barber logbook wherein staff should list the inmates who refused and accepted barber services for each month. (Oct. 16, 2018 Tr. 222.)

Defendant Gallihar testified that there appears to be about a two-week period when barber services in pod 5 of the C-building—the specific pod where DePaola was housed—were not widely available. (Oct. 16, 2018 Tr. 222.) Gallihar based his testimony on the barber logbook for the C-building and a list that he compiled for DePaola during discovery of this litigation that details which barber inmates were hired at Red Onion and when. (Oct. 16, 2018. Tr. 222-23; *see also* Plaintiff's Exhibit PX-121.) Defendant Gallihar testified that he had instructed an employee in Red Onion's accounting department to compile a list of inmates who were paid as barbers during the relevant timeframe. (Oct. 16, 2018 Tr. 223.) The list, which was entered into evidence as Plaintiff's Exhibit PX-121, details that a barber inmate was not specifically hired for pod 5 of the C-building from April 26, 2015 to December 14, 2015. (Plaintiff's Exhibit PX-121.) However, the list further details that inmate Brandon Hicks was hired as a barber for pod 6 of the C-building from May 18, 2015 to December 13, 2015. (*Id*.) The list also details that beginning December 14, 2015, Hicks was hired to service pods 4, 5, and 6 of the C-building. (*Id*.) Therefore—as conceded by Defendant Gallihar—it appears that an inmate barber was not specifically hired for pod 5 of the C-building from April 26, 2015 to December 13, 2015. (*See id*.) Nonetheless, Defendant Gallihar also testified that it is likely that Hicks was actually servicing pod 5 from April 26, 2015 to December 13, 2015 but that the list does not reflect this because of a data entry error. (Oct. 16, 2018 Tr. 228-29.) Defendant Gallihar explained that the barber logbook for C-building shows barber services were offered for several months in pod 5 in 2015 and that the logbook specifically states that DePaola received

11

barber services in October 2015, November 2015, and January 2016. (Oct. 16, 2018 Tr. 230-31.) Defendant Gallihar also testified that the barber logbook states that DePaola refused barber services in December 2015. (Oct. 16, 2018 Tr. 231.) Further, DePaola's own evidence establishes that he was offered barber services on December 30, 2015. (*See* Plaintiff's Exhibit PX-17, ECF No. 121-10.)

Judge Sargent correctly found that none of the Defendants purposely denied DePaola barber services despite the fact that barber services may not have been widely available in pod 5 of the C-building in the months leading up to November 2015. Judge Sargent's findings are supported by direct and circumstantial evidence presented at the evidentiary hearing. The record indicates that the Defendants, in an effort to correct the administrative failures of the previous C-building unit manager, attempted to provide barber services as often as possible in the fall and winter of 2015 despite the fact that many of the Defendants were only temporarily "filling-in" in the C-building. Although barber services were perhaps not as widely available as DePaola had wished, the Defendants' were, at most, negligent in failing to provide additional barber services during the fall and winter of 2015. Judge Sargent correctly found that the Defendants did not purposely deny DePaola barber services and the Defendants therefore respectfully request that the Court adopt Judge Sargent's Report and Recommendation in full.

## Conclusion

Instead of specifically objecting to Judge Sargent's Report and Recommendation as required by The Magistrates Act and Rule 72, DePaola essentially re-filed his Proposed Findings of Fact and Conclusions of Law. DePaola's Objections seek to re-litigate each Defendant's liability under both § 1983 and RLUIPA. "In short, unsatisfied by the findings and recommendations in the Report, [DePaola] has simply ignored it, attempting instead to seek re-

12

argument and reconsideration of h[is] entire case in the guise of objecting." *Veney v. Astrue*, 539 F. Supp. 2d 841, 844 (W.D. Va. 2008).

Nonetheless, it appears that DePaola objects with the most specificity to Judge Sargent's finding that Defendant Lyall did not purposely deny DePaola barber services. But as explained, Judge Sargent did not err when she found that none of the Defendants "purposely den[ied]" DePaola barber services. Contrary to DePaola's assertions, an intentional state-of-mind finding is required for First Amendment liability under § 1983 and RLUIPA. DePaola does not argue there is any evidence to *rebut* Judge Sargent's findings. Therefore, Judge Sargent correctly found that Defendant Lyall did not purposely deny DePaola barber services, which is supported by the evidence presented at trial.

The record establishes that DePaola received barber services in October 2015, November 2015, and January 2016. Further, DePaola's own evidence demonstrates that he was offered barber services on December 30, 2015. Defendants therefore did not purposely deny DePaola barber services, and they respectfully request that the Court adopt Judge Sargent's Report and Recommendation in full, finding that the Defendants did not violate DePaola's First Amendment and RLUIPA rights.

Respectfully submitted,

E. R. BARKSDALE, A. GALLIHAR, W. SWINEY, D. STILL, A. DUNCAN, J. G. LYALL and R. STANLEY.

By:   /s/ Ann-Marie White
Ann-Marie C. White, VSB #91166
Assistant Attorney General
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
Main: (804) 786-2071
Fax: (804) 786-4239

13

Email: awhite@oag.state.va.us

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of February, 2019, I electronically filed the foregoing Defendants' Response to Plaintiff's Objections to the February 5, 2019 Report and Recommendation with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF participants:

Jaime M. Crowe, Esq.
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Email: jcrowe@whitecase.com
(*Counsel for Plaintiff*)

Jeremy B. O'Quinn, Esq.
The O'Quinn Law Office, PLLC
P.O. Box 2327
532 W. Main Street
Wise, VA 24293
E-mail theoquinnlawoffice@gmail.com
(*Counsel for Defendant Fleming*)

And I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant: N/A

By: /s/ Ann-Marie White
Ann-Marie C. White, VSB #91166
Assistant Attorney General
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
Main: (804) 786-2071
Fax: (804) 786-4239
Email: awhite@oag.state.va.us