# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **ERIC DePAOLA,** | ) |
| | ) |
| Plaintiff, | ) Case No. 7:16CV00485 |
| | ) |
| v. | ) **OPINION AND ORDER** |
| | ) |
| **H. CLARKE, ET AL.,** | ) By: James P. Jones |
| | ) United States District Judge |
| Defendants. | ) |

*Jaime M. Crowe, James P. Gagen, Nicholas P. Putz, White & Case LLP, Washington, DC, for Plaintiff; Jeremy B. O'Quinn, O'Quinn Law Office, PLLC, Wise, Virginia, for Defendant Fleming; and Ann-Marie C. White, Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for remaining Defendants.*

This prisoner civil rights action under 42 U.S.C. § 1983 is before me on the Report and Recommendation ("Report") of the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B), (C). In her Report, the magistrate judge made recommended findings of fact from the evidence presented to her during a bench trial, and concluded that I should enter judgment for the defendants. The plaintiff, through counsel, has filed Proposed Findings of Fact and Conclusions of Law and separate objections to the Report. After conducting a de novo review of the Report, the parties' submissions, and pertinent parts of the record, including transcripts of the bench trial, I will overrule the objections, adopt the Report, and enter judgment for the defendants.

I.

Many facts relevant to DePaola's claims are now undisputed. During the period at issue in the case, DePaola held a sincere Muslim religious belief that he should wear a beard and participate in the Jum'ah religious service on Fridays. DePaola was also participating in the Segregation Step-Down Procedure at Red Onion State Prison ("Red Onion"). Under this procedure, an inmate who avoids disciplinary charges, regularly demonstrates responsible behavior, and meets other developmental goals can progress through levels of increased privileges and less restrictive housing assignments, including eventual removal from segregated confinement. By early 2015, DePaola had moved up the Intensive Management ("IM") pathway of the Step-Down Procedure to privilege level IM-1 and could have his television in his cell. By June of 2015, he had moved to privilege level IM-2 and had a job. While in IM-1 and IM-2, DePaola practiced his religious beliefs by having a barber trim his beard periodically to meet the prison's grooming policy requirement and by watching Jum'ah services on his personal television in his cell.

On November 3, 2015, supervisory officers noticed that DePaola had a goatee that was several inches long, whereas the grooming policy at that time permitted beards to be no more than one quarter-inch long. Lieutenant Lyall told DePaola that his privilege level was being reduced from IM-2 to IM-0, because his

beard was out of compliance with grooming requirements. DePaola also incurred a disciplinary charge for his noncompliance. DePaola then shaved off his beard, in violation of his Muslim beliefs. The disciplinary charge was dismissed, but DePaola remained in IM-0 status for approximately six months, the minimum time period the Step-Down Procedure requires in each status. As an IM-0 inmate, DePaola could not use his television and could not watch the broadcast of weekly Jum'ah services, which violated another of his Muslim beliefs. In late April of 2016, DePaola was promoted to IM-1 status, and he was then able to use his television to participate in Jum'ah services.

DePaola claims that for several months before November 3, 2015, officials had failed to offer barber services to inmates in his housing area. DePaola asserts that because of the disciplinary charge and the reduction to IM-0 status, he felt pressured in November of 2015 to violate his beliefs by shaving his beard. DePaola claims that the defendants' actions that enforced the grooming policy and implemented the Step-Down Procedure violated his right to free exercise of his religious beliefs under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 28 U.S.C. § 2000cc-1(a).

I granted summary judgment on DePaola's facial challenge to the Virginia Department of Corrections ("VDOC") policies at issue — the grooming policy and the Segregation Step-Down Procedure — because DePaola was able to practice his

beliefs under those policies by having his beard trimmed. Op. 19, ECF No. 56. I also granted summary judgment as to DePaola's claims based merely on VDOC policy violations, his claims for monetary damages under RLUIPA and those against the defendants in their official capacities, and his claims against defendants Clarke and Robinson. *Id.* I denied summary judgment as to DePaola's First Amendment claim for damages and prospective relief and his RLUIPA claim for prospective relief. *Id.* I referred the matter to the magistrate judge, resulting in the present Report. In so doing, I noted material facts in dispute regarding the remaining issues in this case, as follows:

> (1) Did in fact any of the defendants Barksdale, Gallihar, Swiney, Still, Duncan, Lyall, Fleming, and Stanley fail to provide barber services to plaintiff DePaola in 2015 and 2016, or did not prevent or correct such failure, and thereby prevented DePaola from adhering to sincerely held religious beliefs?
>
> (2) Was in fact any punishment or loss of privileges imposed on DePaola for failure to comply with the applicable grooming policy so disproportionate to legitimate penal needs, so as to violate DePaola's sincerely held religious beliefs?
>
> (3) If DePaola's religious rights were violated, what monetary damages or injunctive relief, if any, should be awarded?

*Id.* at 18-19.

II.

The magistrate judge makes only a recommendation to this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making "a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Although the district court may give a magistrate judge's proposed findings and recommendations "such weight as [their] merit commands and the sound discretion of the judge warrants," the authority and the responsibility to make an informed final determination remains with the district judge. *United States v. Raddatz*, 447 U.S. 667, 683 (1980) (internal quotation marks and citation omitted). Therefore, in performing a de novo review, the district judge must exercise "his non-delegable authority by considering the actual testimony, and not merely by reviewing the magistrate's report and recommendations." *Wimmer v. Cook*, 774 F.2d 68, 76 (4th Cir. 1985).

To state a viable claim under the First Amendment or RLUIPA, DePaola must first demonstrate that the defendant prison officials' actions or policies placed a substantial burden on his free exercise of his sincere religious belief. *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981) (First Amendment); *Lovelace v. Lee*, 472 F.3d 174, 185 (4th Cir. 2006) (RLUIPA). For purposes of the First Amendment or RLUIPA, a substantial burden on religious exercise occurs when a state action or policy "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at 187 (quoting *Thomas*, 450 U.S. at 718). "No substantial burden occurs if the government action merely makes the

'religious exercise more expensive or difficult' or inconvenient, but does not pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his or her religion." *Marron v. Miller*, No. 7:13CV00338, 2014 WL 2879745, at *2 (W.D. Va. June 24, 2014) (quoting *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007); *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007) (unpublished)). Officials' merely negligent conduct that impacts an inmate's ability to exercise his religious rights does not support an actionable claim under either the First Amendment or RLUIPA. *Lovelace*, 472 F.3d at 194.

It is undisputed that on November 3, 2015, DePaola's beard was several inches long, which did not comply with the grooming policy. The threshold question of material fact is whether the defendants' actions before that date prevented DePaola from complying with the grooming policy, thereby also preventing him from displaying responsible behavior as required to avoid demotion under the Step-Down Procedure.

The Report answers this question in the negative. Specifically, the Report finds from the evidence presented at the bench trial that barber services were available during the months before November 3, 2015, if DePaola had asked for them. Report 31, ECF No. 137. I find that the weight of the evidence supports this factual finding.

Although no barber was assigned to DePaola's housing area at times, officers testified that if DePaola had asked them for barber services, they would have arranged for a barber from another housing area to trim his hair or beard. DePaola has admitted that in the months before November 3, 2015, he did not file any written request for barber services or file grievances about a lack of such services. He has also admitted his awareness that compliance with grooming requirements was part of the responsible behavior goal related to progress or demotion in the Step-Down Procedure. Nevertheless, rather than acting responsibly himself, in this lawsuit, DePaola blames his noncompliance with the grooming policy on the defendants' failure to follow policy requirements to regularly *offer* barber services to inmates.

The Report does find, with no objection from DePaola, that Red Onion's records on barber services during this period were incomplete and that services were not always offered as frequently as policy required. *Id.* The Report also finds, however, that no defendant purposefully denied DePaola barber services. I find that the weight of the evidence supports this factual finding.

The defendants and their subordinants may have failed to follow prison policy on the frequency of offering barber services to inmates, whether because of staffing changes or shortages, or staff inadvertence and oversight, such as the spotty record keeping. As I have already found, however, violations of policy

themselves are not constitutional violations for which the defendants could be held liable under § 1983. Opin. 16, ECF No. 56. Rather, these actions or omissions rise no higher than possibly negligent performance of job duties or supervision of staff that do not equate with knowing infringement on DePaola's religious practice of trimming, instead of shaving, his beard. A defendant's merely negligent conduct is not sufficient for liability under § 1983 or RLUIPA. *Lovelace*, 472 F.3d at 194.

Similarly, DePaola has not established liability against defendant Lyall. DePaola testified that on November 3, 2015, when Lyall told him he was being demoted to IM-0 because his beard was too long, DePaola told Lyall that no barber services had been offered for three months, he had not been charged with noncompliance, and his religion prohibited him from shaving, rather than trimming, his beard. Tr. 50, ECF No. 130.

From this response, Lyall understood that DePaola was refusing to come into compliance with the grooming standard. *Id.* at 252. DePaola claims that he then told Lyall that he needed barber services, and Lyall said there was no barber. *Id.* at 106-07. By contrast, Lyall testified that DePaola did not discuss barber services on November 3, 2015, and that if he had asked for a barber, Lyall would have provided one. *Id.* at 261. Lyall's purported misinterpretation of DePaula's response is, at most, negligence that cannot support an actionable federal claim. In any event, defendant Still made the decision to demote DePaola to IM-0 because of

his *prior* noncompliance. DePaola's request for a barber on November 3, 2015, under the threat of losing his privileges, did not necessarily excuse his failure to make express requests for such services earlier, before allowing his beard to grow so far out of compliance in the preceding weeks. Similarly, no prior disciplinary charge for noncompliance was required before demotion under the Step-Down Procedures. I conclude that the weight of the evidence supports the factual findings of the Report on these issues.

Finally, the Report finds that "the defendants' actions in enforcing the grooming policy did not substantially burden DePaola's rights to freely exercise his religious beliefs." Report 31, ECF No. 137. DePaola has claimed that he felt pressured by the defendants' actions on November 3, 2015, to shave his beard in violation of his religious beliefs, or face demotion to IM-0 and loss of Jum'ah services. Like the magistrate judge, I am not persuaded that the defendants put DePaola to this choice. On the contrary, the weight of the evidence persuades me that if DePaola had asked to have a barber trim his beard when it first exceeded the grooming standard, such services would have been provided, and he could have avoided demotion and its concurrent loss of television privileges and Jum'ah participation.

Based on these factual findings, I agree with the Report that DePaola has not met his burden under the First Amendment or RLUIPA to prove that the

defendants' purposeful actions placed a substantial burden on his religious exercise. Thus, the defendants have no burden to prove in this case that DePaola's temporary loss of privileges based on his noncompliance with grooming standards was disproportionate to penological interests. I conclude that they are entitled to judgment in their favor.

### III.

For the stated reasons, it is **ORDERED** that the plaintiff's objections, ECF No. 138, are OVERRULED and the Report, ECF No. 137, is ACCEPTED.

A separate judgment in favor of the defendants will be entered forthwith.

ENTER: July 29, 2019

/s/  JAMES P. JONES
United States District Judge